UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
GREAT AMERICAN INSURANCE COMPANY,

                Plaintiff,

-against-

GEMSTONE PROPERTY MANAGEMENT LLC and
DHNY APT IV LLC,

                Defendants.
-------------------------------------------------------------------X

Case No.:

Civil Action

**COMPLAINT FOR DECLARATORY JUDGMENT**

**[Demand For Jury Trial]**

Plaintiff GREAT AMERICAN INSURANCE COMPANY ("Great American"), by and through its attorneys, WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP, petitions this Court for a Declaratory Judgment against Defendants GEMSTONE PROPERTY MANAGEMENT LLC ("Gemstone") and DHNY APT IV LLC ("DHNY"), and alleges as follows:

**INTRODUCTION**

1. Great American brings this action for declarations that it has no duty to defend or indemnify Defendants pursuant to a Commercial Umbrella Policy it issued to "DHNY Gemstone Realty Partners" as the named insured, for premises located at "25-29 St. Nicholas Terrace, NEW YORK, NY 10027," in connection with the action entitled *Luis Manuel Garcia Salcedo v. Strathmore Construction Management, LLC, Sunation Thermal Services, Inc., Sustainable Energy Options, LLC, Gemstone Property Management, LLC, and DHNY IV LLC*, Supreme Court of New York, Bronx County, Index No. 306568/2013E ("Underlying Action").

**PARTIES**

2. Plaintiff Great American is an insurance company organized and existing under

Ohio law, with its principal place of business in Ohio.

3. On information and belief, Defendant Gemstone is a limited liability company formed under New York law, with its principal place of business in New York.

4. On information and belief, Defendant DHNY is a limited liability company formed under Delaware law, with its principal place of business in New York.

## JURISDICTION AND VENUE

5. This is an action for declaratory relief pursuant to 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure to resolve an actual controversy between the parties, as set forth herein.

6. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Great American and Defendants and there is more than $75,000 in controversy.

7. This Court has personal jurisdiction over Defendants because Defendants have purposefully availed themselves of the privilege of conducting activities within this forum and this action arises from those activities.

8. Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391(b) because this action is brought in the judicial district where Defendants reside and where a substantial part of the events or omissions giving rise to this Complaint occurred.

## THE POLICIES

9. Non-party Aspen Specialty Insurance Company ("Aspen") issued a commercial general liability policy, policy number CRADA5D13, to "DHNY APT IV LLC" as the named insured, effective from September 11, 2013 to September 11, 2014, with limits of $1 million each occurrence and $2 million in the general aggregate (the "Primary Policy"). A complete and correct

copy of the Primary Policy is attached as **Exhibit A**.

10.     The Primary Policy contains an "Additional Named Insured" Endorsement, which amends the Primary Policy to include "Gemstone Property Management LLC" as a named insured.

11.     The Primary Policy also contains a "Limitation of Coverage to Designated Premises or Project" Endorsement, which limits coverage to "bodily injuries" arising out of premises shown in a Schedule. "25 Saint Nicholas Terrace, New York, NY 10027" is included on this Schedule.

12.     The Primary Policy contains a "Designated Ongoing Operations" Exclusion, which provides:

**EXCLUSION – DESIGNATED ONGOING OPERATIONS**

**THIS ENDORSEMENT MODIFIES INSURANCE PROVIDED UNDER THE FOLLOWING:**
COMMERCIAL GENERAL LIABILITY COVERAGE PART:

**SCHEDULE**

**Description of Designated Operation(s):**

Any construction or renovation-related activity except for janitorial or maintenance-related work performed by your employees.

**Specified Location** (if Applicable):

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The following exclusion is added to paragraph **2.**, Exclusions of COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY (Section **I** – Coverages): This insurance does not apply to "bodily injury" or "property damage" arising out of the ongoing operations described in the Schedule of this endorsement, regardless of whether such operations are conducted by you or on your behalf or whether the operations are conducted for yourself or for others.

Unless a "location" is specified in the Schedule, this exclusion applies regardless of where such operations are conducted by you or on your behalf. If a specific "location" is designated in the Schedule of this endorsement, this exclusion applies only to the described ongoing operations conducted at that "location". For the purpose of this endorsement, "location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway, waterway or right-of-way of a railroad.

13.     Great American issued a "Protector Commercial Umbrella" policy to Distinguished

3

Properties Umbrella Managers, Inc. ("Distinguished"), a risk purchasing group, policy number UM1942898, effective from September 1, 2013 to September 1, 2015 (the "Umbrella Policy"). A complete and correct copy of the Umbrella Policy is attached as **Exhibit B**.

14. A Certificate of Coverage was issued to "DHNY Gemstone Realty Partners" as a member of Distinguished's risk purchasing group, certificate number UM30006817, effective from September 10, 2013 to September 10, 2014, providing the lead $10,000,000 layer of $100,000,000 in umbrella and excess liability coverage as a named insured under the Umbrella Policy. A complete and correct copy of the Certificate of Coverage is attached as **Exhibit C**. (The Umbrella Policy and Certificate of Coverage are hereafter collectively called the "Umbrella Policy.")

15. The Umbrella Policy's Schedule of Locations identifies "25-29 Nicholas Terrace, NEW YORK, NY 11027" as "Location No. 1."

16. The Umbrella Policy contains a "Limitation of Coverage to Specified Locations" Endorsement, which limits umbrella coverage to liability arising out of specified locations covered by underlying insurance. "25-29 Nicholas Terrace, NEW YORK, NY 11027" is one of these specified locations.

17. The Umbrella Policy contains a "Risk Purchasing Group" Endorsement, which makes all Distinguished members, including "DHNY Gemstone Realty Partners," insureds under the Umbrella Policy.

18. The Umbrella Policy's "Risk Purchasing Group" Endorsement also states, in pertinent part:

This endorsement modifies insurance provided under the following:

**COMMERCIAL UMBRELLA COVERAGE FORM**

\*   \*   \*

The following is added to Section **IV. EXCLUSIONS:**

\* \* \*

**Bodily Injury or Property Damage Follow Form**

Except to the extent that such insurance is provided by a policy listed in the Schedule of Underlying Insurance, and for no broader coverage than is provided by such policy, any "bodily injury" or "property damage."

19. Accordingly, the Umbrella Policy follows form to all of the exclusions applicable to preclude coverage for "bodily injury" or "property damage" in any policy listed in the Schedule of Underlying Insurance.

20. The Umbrella Policy's "SCHEDULE A – SCHEDULE OF UNDERLYING INSURANCE (SUPPLEMENTAL)" states, in pertinent part:

| Carrier, Policy Number and Period | Type of Coverage | Limits of Insurance (THE LIMITS LISTED BELOW ARE THE MINIMUM LIMITS REQUIRED AND MAY BE HIGHER |
|---|---|---|
| It is warranted by the Purchasing Group Member that any carrier for underlying insurance in force, or at renewal or replacement thereof, will be rated A –VI or better by A.M. Best and that the underlying insurance provides supplementary payments that do not reduce the limits of insurance | General Liability | $1,000,000 Each Occurrence<br>$1,000,000 Personal & Advertising Injury<br>INCLUDED Products/Completed Operations Aggregate<br>$2,000,000 General Aggregate |

21. The Aspen Primary Policy is the General Liability policy referenced in the Schedule of Underlying Insurance.

22. Accordingly, the Umbrella Policy follows form to the "Designated Ongoing Operations" Exclusion contained in the Aspen Primary Policy.

23. The Umbrella Policy also contains the following pertinent provisions:

5

I. **COVERAGE**

We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury," "property damage," "personal injury," or "advertising injury" that takes place during the Policy Period and is caused by an "occurrence" happening anywhere. The amount we will pay for damages is limited as described below in the **Insuring Agreement** Section **II. LIMITS OF INSURANCE**.

II. **LIMITS OF INSURANCE**

\*    \*    \*

**E.** If the applicable Limits of Insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing coverage to the "Insured" are reduced or exhausted by actual payment of one or more "claims," subject to the terms and conditions of this policy, we will:

**1.** in the event of reduction, pay in excess of the reduced underlying Limits of Insurance, or;

**2.** in the event of exhaustion, continue in force as "underlying insurance," but for no broader coverage than is available under this policy.

\*    \*    \*

G. **Retained Limit**

We will be liable only for that portion of damages, subject to the Each Occurrence Limit stated in the Declarations, in excess of the "retained limit," which is the greater of:

**1.** the total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other insurance providing coverage to the "Insured" during the Policy Period; or

**2.** the amount stated in the Declarations as Self-Insured Retention as a result of any one "occurrence" not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other insurance providing coverage to the "Insured" during the Policy Period; and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

Once the Self-Insured Retention has been exhausted by actual payment of "claims" in full by the "Insured," the Self-Insured Retention will not be reapplied or again payable by the "Insured" for said Policy Period.

III. **DEFENSE**

**A.** We will have the right and duty to investigate any "claim" and defend any "suit" seeking damages covered by the terms and conditions of this policy when:

6

287796602v.1

      **1.** the applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limits of Insurance of any other insurance providing coverage to the "Insured" have been exhausted by actual payment of "claims" for any "occurrence" to which this policy applies;

                            \*        \*        \*

**VI.**    **CONDITIONS**

                            \*        \*        \*

    **I.**    **Maintenance of Underlying Insurance**

      During the period of this policy, you agree:

      **1.** to keep the policies listed in the Schedule of Underlying Insurance in full force and effect;

      **2.** that any renewals or replacements of the policies listed in the Schedule of Underlying Insurance will not be more restrictive in coverage;

      **3.** that the Limits of Insurance of the policies listed in the Schedule of Underlying Insurance will be maintained except for any reduction or exhaustion of aggregate limits by payment of "claims" or "suits" for "occurrences" covered by "underlying insurance"; and

      **4.** that the terms, conditions and endorsements of the policies listed in the Schedule of Underlying Insurance will not change during the period of this policy such as to increase the coverage afforded under this policy.

If you fail to comply with these requirements, we will only be liable to the same extent that we would have been had you fully complied with these requirements.

    **J.**    **Other Insurance**

If other insurance applies to a loss that is also covered by this policy, this policy will apply excess of the other insurance. Nothing herein will be construed to make this policy subject to the terms, conditions and limitations of such other insurance. However, this provision will not apply if the other insurance is specifically written to be excess of this policy.

## **THE CLAIM**

24.    On October 28, 2013, claimant-plaintiff Luis Manuel Garcia Salcedo ("Salcedo") commenced the Underlying Action via a Complaint against "Sustainable Energy Options, LLC" ("Sustainable"), among other defendants ("Underlying Complaint").

287796602v.1

25. On January 8, 2014, Salcedo amended his complaint to include Gemstone and DHNY as defendants ("First Amended Underlying Complaint").

26. Salcedo amended his complaint again on August 18, 2015 ("Second Amended Underlying Complaint"). A complete and correct copy of the Second Amended Complaint is attached as **Exhibit D**. (The First and Second Amended Underlying Complaints are hereafter collectively called the "Amended Underlying Complaints").

27. The Amended Underlying Complaints allege that Salcedo was working in a boiler room/basement located at "25 St. Nicolas Terrace, New York, New York" (the "Premises") on September 12, 2013.

28. The Amended Underlying Complaints allege that an agreement existed between the defendants in the Underlying Action to perform certain construction work, labor and services at the Premises.

29. The Amended Underlying Complaints allege that the construction work included the erection, plumbing, boiler demolition, boiler assembly, repair, alteration and/or other work upon the structure situated upon the Premises.

30. The Amended Underlying Complaints allege that, while dismantling a boiler, Salcedo was struck in the lower back by a falling object, causing him bodily injuries.

31. The Amended Underlying Complaints allege that Gemstone and DHNY were the owners of and/or the general contractor for construction work at the Premises on the date of Salcedo's alleged accident.

32. Sentinel Insurance Company ("Sentinel") issued a business insurance policy to Sustainable as the named insured ("Sentinel Policy").

33. Upon information and belief, the Sentinel Policy contains a $1,000,000/$2,000,000

applicable single/general aggregate limit.

34. Sentinel is providing a defense to Gemstone and DHNY as additional insureds in the Underlying Action under the Sentinel Policy.

35. Upon information and belief, the other defendants in the Underlying Action may have insurance policies issued to them as named insureds under which Gemstone and DHNY qualify as additional insureds for the allegations and claims of the Underlying Action.

36. On July 11, 2019, the Supreme Court, Bronx County granted summary judgment on liability to Gemstone and DHNY, *inter alia*.

37. On January 5, 2021, the Appellate Division, First Department reversed the lower court's decision. A complete and correct copy of the court's January 5, 2019 decision and order is attached as **Exhibit E**.

38. Great American understands that the Underlying Action is ongoing, with trial currently scheduled for October 23, 2023.

39. Great American first received notice of the Underlying Action on February 11, 2014 via an ACORD Notice.

40. Great American acknowledged receipt of the Underlying Action, via letter, on February 12, 2014, logging Salcedo's claim as an "incident only" and advising that Defendants should contact Great American if they believed "this loss warrants [Great American's] involvement." A complete and correct copy of Great American's February 12, 2014 letter is attached as **Exhibit F**.

41. On February 24, 2014, via letter, Aspen disclaimed coverage for the Underlying Action based on, *inter alia*, its Policy's "Designated Ongoing Operations" Exclusion. A complete and correct copy of Aspen's February 24, 2014 letter is attached as **Exhibit G**.

42. Great American was not notified of Aspen's disclaimer until September 27, 2021.

43. Great American understands that Defendants did not challenge Aspen's disclaimer.

44. On July 15, 2021, Defendants contacted Great American, via a letter from their defense counsel (received July 20, 2021), for the first time since Great American's February 12, 2014 acknowledgment letter indicating that it would not investigate the matter, but only log the report of the lawsuit as an "incident only" unless was advised that it's umbrella layer of coverage was implicated. A complete and correct copy of the July 15, 2021 letter from Defendants' defense counsel is attached as **Exhibit H**.

45. The July 15, 2021 letter advises **"[p]lease accept this letter as renewed notice of a lawsuit involving your insureds, DHNY IV, LLC and Gemstone Property Management, LLC, and the potential that your company's insurance policies may be subject to exposure. Plaintiff's current settlement demand is $10,850,000."** *See* Exhibit K (emphasis in the original).

46. Great American learned for the first time, via this letter, that Defendants were granted summary judgment, that summary judgment was reversed on appeal, and that Salcedo's claimed damages were in excess of $1,000,000, the single limit of Sentinel's policy.

47. On August 3, 2021, Great American emailed Defendants' defense counsel and Aspen's insurance adjuster, requesting a copy of Aspen's insurance policy.

48. Great American reiterated its request in another email to Defendants' defense counsel and Aspen's insurance adjuster on August 20, 2021.

49. On August 24, 2021, Aspen's adjuster forwarded Great American's request to Sunpoint Insurance Service Corporation, which, on information and belief, is a third-party administrator.

50. On September 27, 2021, via an email from Aspen, Great American received for the

first time both the Primary Policy and Aspen's February 24, 2021 disclaimer. The August 3, 20, and 24, 2021 and September 27, 2021 emails are attached as **Exhibit I**.

51. Upon receipt of the Primary Policy and Aspen's disclaimer letter, Great American immediately drafted a disclaimer letter, which was sent to Defendants and Salcedo's counsel on October 28, 2021. A complete and correct copy of Great American's October 28, 2021 disclaimer letter is attached as **Exhibit J**.

### COUNT I: DECLARATORY RELIEF
### REGARDING DUTY TO DEFEND GEMSTONE

52. Great American incorporates the allegations in each of the foregoing paragraphs as if fully set forth herein.

53. An actual controversy exists between Great American and Gemstone regarding whether Great American has a duty to defend Gemstone in the Underlying Action.

54. The Primary Policy's "Designated Ongoing Operations" Exclusion bars coverage for bodily injuries arising out of the ongoing operations of any construction or renovation-related activity.

55. Under the Umbrella Policy's "Risk Purchasing Group" Endorsement, the Umbrella Policy follows form to the Primary Policy.

56. The Amended Underlying Complaints allege that, while dismantling a boiler, Salcedo was struck in the lower back by a falling object, causing him bodily injuries.

57. Because Salcedo alleges bodily injury arising out of ongoing construction or renovation related activity, the "Designated Ongoing Operations" Exclusion applies to bar coverage under the Umbrella Policy.

58. Because the "Designated Ongoing Operations" Exclusion applies to bar coverage under the Umbrella Policy, there is no duty to defend Gemstone in the Underlying Action.

11

59. The Great American Umbrella Policy is excess of the $1,000,000 limit of the Aspen Primary Policy and $2,000,000 limit of the primary Sentinel Policy.

60. Upon information and belief, there is other primary insurance under which Gemstone qualifies as an additional insured which applies to provide coverage for Gemstone for the Underlying Action.

61. Great American was not notified that the damages in the Underlying Action could potentially reach its excess layer until its receipt on July 20, 2021 of the July 15, 2021 letter.

62. Upon receipt of the July 15, 2021 letter, Great American immediately undertook an investigation to gather all information necessary to make a coverage determination, including the Aspen Primary Policy to which the Umbrella Policy in part follows form.

63. The October 28, 2021 disclaimer of coverage was issued within 31 days after Great American first received a copy of the Primary Policy and was first notified of Aspen's February 24, 2014 disclaimer, completing its investigation

64. Because Great American was not notified until July 20, 2021 that the damages in the Underlying Action could reach its excess layer, and because Great American issued its disclaimer letter as soon as was reasonably possible after it received all of the necessary information and documents, its disclaimer letter was timely under New York Insurance Law § 3420(d)(2).

65. Additionally, Gemstone is being defended by Sentinel in the Underlying Action.

66. The Umbrella Policy does not provide coverage for the defense of Gemstone in the Underlying Action unless and until the applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limit of Insurance of all other insurance providing coverage to Gemstone, including but not limited to the Sentinel Policy and any other

policy under which Gemstone qualifies as an additional insured, have been exhausted by actual payment of claims.

67. Additionally, an independent of Great American's disclaimer of coverage, the Umbrella Policy does not provide coverage for the defense of Gemstone in the Underlying Action due to the application of the Umbrella Policy's "Maintenance of Underlying Insurance" Condition.

68. Additionally, Great American relies upon all terms, definitions, exclusions, conditions, and endorsements in the Umbrella Policy not expressly referenced herein that may limit or preclude coverage for the defense of Gemstone in the Underlying Action.

## COUNT II: DECLARATORY RELIEF REGARDING DUTY TO DEFEND DHNY

69. Great American incorporates the allegations in each of the foregoing paragraphs as if fully set forth herein.

70. An actual controversy exists between Great American and DHNY regarding whether Great American has a duty to defend DHNY in the Underlying Action.

71. The Primary Policy's "Designated Ongoing Operations" Exclusion bars coverage for bodily injuries arising out of the ongoing operations of any construction or renovation-related activity.

72. Under the Umbrella Policy's "Risk Purchasing Group" Endorsement, the Umbrella Policy follows form to the Primary Policy.

73. The Amended Underlying Complaints allege that, while dismantling a boiler, Salcedo was struck in the lower back by a falling object, causing him bodily injuries.

74. Because Salcedo alleges bodily injury arising out of ongoing construction or renovation related activity, the "Designated Ongoing Operations" Exclusion applies to bar coverage under the Umbrella Policy.

75.     Because the "Designated Ongoing Operations" Exclusion applies to bar coverage under the Umbrella Policy, there is no duty to defend DHNY in the Underlying Action.

76.     The Great American Umbrella Policy is excess of the $1,000,000 limit of the Aspen Primary Policy and $1,000,000 limit of the primary Sentinel Policy.

77.     Upon information and belief, there is other primary insurance under which DHNY qualifies as an additional insured which applies to provide coverage for DHNY for the Underlying Action.

78.     Great American was not notified that the damages in the Underlying Action could potentially reach its excess layer until receipt of the July 15, 2021 letter.

79.     Upon receipt of the July 15, 2021 letter, Great American immediately undertook an investigation to gather all information necessary to make a coverage determination, including the Aspen Primary Policy to which the Umbrella Policy in part follows form.

80.     The October 28, 2021 disclaimer of coverage was issued within 31 days after Great American first received a copy of the Primary Policy and was first notified of Aspen's February 24, 2014 disclaimer, completing its investigation.

81.     Because Great American was not notified until July 20, 2021 that the damages in the Underlying Action could reach its excess layer, and because Great American issued its disclaimer letter as soon as was reasonably possible after it received all of the necessary information and documents, the disclaimer letter was timely under New York Insurance Law § 3420(d)(2).

82.     Additionally, DNHY is being defended by Sentinel in the Underlying Action.

83.     Even in the absence of the disclaimer of coverage, the Umbrella Policy does not provide coverage for the defense of DHNY in the Underlying Action unless and until the

applicable Limits of Insurance of the underlying policies listed in the Schedule of Underlying Insurance and the Limit of Insurance of all other insurance providing coverage to DHNY, including but not limited to the Sentinel Policy and any other policy under which DHNY qualifies as an additional insured, have been exhausted by actual payment of claims.

84. Additionally, the Umbrella Policy does not provide coverage for the defense of DHNY in the Underlying Action due to the application of the Umbrella Policy's "Maintenance of Underlying Insurance" Condition.

85. Additionally, Great American relies upon all terms, definitions, exclusions, conditions, and endorsements in the Umbrella Policy not expressly referenced herein that may limit or preclude coverage for the defense of DHNY in the Underlying Action.

### COUNT III: DECLARATORY RELIEF REGARDING DUTY TO INDEMNIFY GEMSTONE

86. Great American incorporates the allegations in each of the foregoing paragraphs as if fully set forth herein.

87. An actual controversy exists between Great American and Gemstone regarding whether Great American has a duty to indemnify Gemstone in the Underlying Action.

88. The Primary Policy's "Designated Ongoing Operations" Exclusion bars coverage for bodily injuries arising out of the ongoing operations of any construction or renovation-related activity.

89. Under the Umbrella Policy's "Risk Purchasing Group" Endorsement, the Umbrella Policy follows form to the Primary Policy.

90. The Amended Underlying Complaints allege that, while dismantling a boiler, Salcedo was struck in the lower back by a falling object, causing him bodily injuries

91. Because Salcedo alleges bodily injury arising out of ongoing construction or

287796602v.1

renovation related activity, the "Designated Ongoing Operations" Exclusion applies to bar coverage under the Umbrella Policy.

92. Because the "Designated Ongoing Operations" Exclusion applies to bar coverage under the Umbrella Policy, there is no duty to indemnify Gemstone in the Underlying Action.

93. The Great American Umbrella Policy is excess of the $1,000,000 limit of the Aspen Primary Policy and $1,000,000 limit of the primary Sentinel Policy.

94. Upon information and belief, there is other primary insurance under which Gemstone qualifies as an additional insured which applies to provide coverage for Gemstone for the Underlying Action.

95. Great American was not notified that the damages in the Underlying Action could potentially reach its excess layer until receipt of the July 15, 2021 letter on July 20, 2021.

96. Upon receipt of the July 15, 2021 letter, Great American immediately undertook an investigation to gather all information necessary to make a coverage determination, including the Aspen Primary Policy to which the Umbrella Policy in part follows form.

97. The October 28, 2021 disclaimer of coverage was issued within 31 days after Great American first received a copy of the Primary Policy and was first notified of Aspen's February 24, 2014 disclaimer, completing its investigation

98. Because Great American was not notified until July 15, 2021 that the damages in the Underlying Action could reach its excess layer, and because Great American issued its disclaimer letter as soon as was reasonably possible after it received all of the necessary information and documents, the disclaimer letter was timely under New York Insurance Law § 3420(d)(2).

99. Additionally, the Umbrella Policy does not provide coverage for the indemnity of

Gemstone in the Underlying Action due to the application of the Umbrella Policy's "Maintenance of Underlying Insurance" Condition.

100. Additionally, the Umbrella Policy does not provide coverage for the indemnity of Gemstone in the Underlying Action unless and until the retained limit, including the amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of all other insurance providing coverage to Gemstone, has been paid.

101. Additionally, Great American relies upon all terms, definitions, exclusions, conditions, and endorsements in the Umbrella Policy not expressly referenced herein that may limit or preclude coverage for the indemnity of Gemstone in the Underlying Action.

## COUNT IV: DECLARATORY RELIEF REGARDING DUTY TO INDEMNIFY DHNY

102. Great American incorporates the allegations in each of the foregoing paragraphs as if fully set forth herein.

103. An actual controversy exists between Great American and DHNY regarding whether Great American has a duty to indemnify DHNY in the Underlying Action.

104. The Primary Policy's "Designated Ongoing Operations" Exclusion bars coverage for bodily injuries arising out of the ongoing operations of any construction or renovation-related activity.

105. Under the Umbrella Policy's "Risk Purchasing Group" Endorsement, the Umbrella Policy follows form to the Primary Policy.

106. The Amended Underlying Complaints allege that, while dismantling a boiler, Salcedo was struck in the lower back by a falling object, causing him bodily injuries

107. Because Salcedo alleges bodily injury arising out of ongoing construction or

17

renovation related activity, the "Designated Ongoing Operations" Exclusion applies to bar coverage under the Umbrella Policy.

108. Because the "Designated Ongoing Operations" Exclusion applies to bar coverage under the Umbrella Policy, there is no duty to indemnify DHNY in the Underlying Action.

109. The Great American Umbrella Policy is excess of the $1,000,000 limit of the Aspen Primary Policy and $1,000,000 limit of the primary Sentinel Policy.

110. Upon information and belief, there is other primary insurance under which DNHY qualifies as an additional insured which applies to provide coverage for DHNY for the Underlying Action.

111. Great American was not notified that the damages in the Underlying Action could potentially reach its excess layer until receipt of the July 15, 2021 letter on July 20, 2021.

112. Upon receipt of the July 15, 2021 letter, Great American immediately undertook an investigation to gather all information necessary to make a coverage determination, including the Aspen Primary Policy to which the Umbrella Policy in part follows form.

113. The October 28, 2021 disclaimer of coverage was issued within 31 days after Great American first received a copy of the Primary Policy and was first notified of Aspen's February 24, 2014 disclaimer, completing its investigation

114. Because Great American was not notified until July 20, 2021 that the damages in the Underlying Action could reach its excess layer, and because Great American issued its disclaimer letter as soon as was reasonably possible after it received all of the necessary information and documents, the disclaimer letter was timely under New York Insurance Law § 3420(d)(2).

115. Additionally, the Umbrella Policy does not provide coverage for the indemnity of

DHNY in the Underlying Action due to the application of the Umbrella Policy's "Maintenance of Underlying Insurance" Condition.

116. Additionally, the Umbrella Policy does not provide coverage for the indemnity of DHNY in the Underlying Action unless and until the retained limit, including the amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of all other insurance providing coverage to DHNY, has been paid.

117. Additionally, Great American relies upon all terms, definitions, exclusions, conditions, and endorsements in the Umbrella Policy not expressly referenced herein that may limit or preclude coverage for the indemnity of DHNY in the Underlying Action.

**WHEREFORE**, Plaintiff Great American requests:

(a) On the First Count, an order of declaratory judgment finding: (i) that the Umbrella Policy does not provide coverage for any and all claims arising out of the Underlying Action; (ii) that Great American has no duty to defend Gemstone in the Underlying Action; (iii) that Great American's disclaimer was timely under § 3420(d)(2) of New York Insurance Law;

(b) On the Second Count, an order of declaratory judgment finding: (i) that the Umbrella Policy does not provide coverage for any and all claims arising out of the Underlying Action; (ii) that Great American has no duty to defend DHNY in the Underlying Action; (iii) that Great American's disclaimer was timely under § 3420(d)(2) of New York Insurance Law;

(c) On the Third Count, an order of declaratory judgment finding: (i) that the Umbrella Policy does not provide coverage for any and all claims arising out of the Underlying Action; (ii) that Great American has no duty to indemnify Gemstone in the Underlying Action; (iii) that Great American's disclaimer was timely under § 3420(d)(2) of New York Insurance Law;

(d) On the Fourth Count, an order of declaratory judgment finding: (i) that the Umbrella Policy does not provide coverage for any and all claims arising out of the Underlying Action; (ii) that Great American has no duty to indemnify DHNY in the Underlying Action; (iii) that Great American's disclaimer was timely under § 3420(d)(2) of New York Insurance Law; and

(e) That Great American is entitled to other relief this Court deems just and proper.

## **JURY DEMAND**

Great American Insurance Company demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated:  October 16, 2023
        Madison, New Jersey

        **WILSON ELSER MOSKOWITZ EDELMAN & DICKER, LLP**

By:   */s/ Mark R. Vespole*_____
     Mark R. Vespole, Esq.,
     ID No.: MV1035
     7 Giralda Farms
     Madison, NJ 07940
     Phone:  (973) 735-6134
     Fax:     (973) 624-0808
     mark.vespole@wilsonelser.com
     Attorneys for Plaintiff,
     *Great American Insurance Company/*