UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
                                                                  :
GREAT AMERICAN INSURANCE COMPANY,          :
                                                                  :
                            Plaintiff,                            :
                                                                  :
            -v-                                                   :
                                                                  :
GEMSTONE PROPERTY MANAGEMENT, LLC, et al,  :
                                                                  :
                            Defendants.                           :
                                                                  :
-------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 12/10/2025

23-cv-9100 (LJL)

MEMORANDUM AND
ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiff Great American Insurance Company ("Plaintiff" or "Great American") moves, pursuant to Federal Rules of Civil Procedure 30(a)(1) and 45(d)(2)(B)(i), for an order compelling (1) non-party Best Case Funding II, LLC ("BCF") to produce certain documents in response to Great American's September 11, 2025 document subpoena (the "Document Subpoena"), (2) non-party Neal Magnus ("Magnus") to appear for deposition in compliance with Great American's September 11, 2025 deposition subpoena (the "Magnus Subpoena"), and (3) BCF's corporate representative to appear for deposition in compliance with Great American's October 3, 2025 deposition subpoena (the "30(b)(6) Subpoena"). Dkt. No. 186. Non-parties BCF and Magnus move, pursuant to Federal Rules of Civil Procedure 26 and 45, for an order quashing the Magnus Subpoena and 30(b)(6) Subpoena. Dkt. No. 190. For the reasons that follow, Plaintiff's motion is granted in part and denied in part and BCF's and Magnus' motion is denied. BCF and Magnus are compelled to appear for deposition but the Court denies the motion to compel the production of documents as demanded.

## BACKGROUND

Familiarity with the prior proceedings in this matter is presumed.

This insurance coverage action arises out of a complaint brought by defendant Luis Manuel Garcia Salcedo ("Salcedo") in New York State Supreme Court, Bronx County, asserting claims for negligence and New York Labor Law violations based on injuries Salcedo claimed that he suffered during construction work in September 2013 (the "Underlying Action").  Dkt. No. 60-1.  Salcedo was represented in the Underlying Action by Subin Associates, LLP ("Subin").  Dkt. No. 133 ¶¶ 60–61.  Salcedo's treating physician was Dr. Michael Gerling, M.D. ("Gerling").  *Id.* ¶ 73.  The Underlying Action was settled for $6 million on the eve of trial in the form of cash and an assignment of the insured's claims against Great American.  *Id.* ¶ 40–43.  Great American is an excess insurer of the defendants in the Underlying Action.  *Id.* ¶¶ 15–17.

In its Second Amended Complaint ("SAC"), Great American alleges that it is the victim of common law fraud perpetrated by Salcedo, in conjunction with Subin and Gerling.  Dkt. No. 133 ¶¶ 178–90.  In particular, Plaintiff alleges that Subin was involved in a massive New York fraud scheme pursuant to which Subin represented workers who claimed they were injured in "unwitnessed falls" while employed on local construction sites and who sued the construction companies, the insurance companies and the property owners for the alleged injuries.  *Id.* ¶¶ 64, 68.  The incidents, however, were not real but were "fake" and "staged."  *Id.* ¶ 64.  To perpetrate the scheme, Subin obtained fraudulent litigation funding loans and then referred clients to Dr. Gerling who provided unnecessary diagnostic and medical treatment to support the legal claims.  *Id.* ¶¶ 66, 78–81.  As to Salcedo in particular, Plaintiff alleges that his claim to have been injured on the worksite was false and inconsistent with the contemporaneous medical records and that the surgical treatment he received from Dr. Gerling was unnecessary and not medically indicated.  *Id.* ¶¶ 82–106.

BCF provided litigation funding in connection with Salcedo's case.  Salcedo was referred to Subin on September 24, 2013.  Dkt. No. 187 at 3.  That same day, BCF agreed to provide Salcedo a $6,500 non-recourse loan (consisting of a $5,000 advance plus a $1,000 due diligence fee and a $500 application fee) to be payable solely out of the proceeds of a litigation that had yet to be filed (the "First Funding Agreement").  Dkt. No. 170-16 at 3.[1]  The First Funding Agreement contained a representation, warranty, and covenant from Subin that Salcedo's lawsuit was "still pending and is being vigorously litigation as to both liability and injury," even though the intake sheet for the representation was completed only on that day and litigation was not pending and would not be filed until October 28, 2013.  *Id.* at 2.  The First Funding Agreement was signed by Subin on September 24, 2013, but was not signed by Salcedo until September 26, 2013.  *Id.*  The address listed for BCF is now a UPS store.  Dkt. No. 169 at 8.  On November 7, 2013, *i.e.*, within two months of the alleged incident and only days after the litigation was filed, BCF loaned an additional $67,000 to Salcedo, bringing the total loan to $73,500, in consideration for a security interest in Salcedo's lawsuit.  Dkt. No. 170-17 at 1.  The funds were distributed to either doctors or to other third parties or to an entity identified as "Tri-State Medical Liaison Services," an entity for which Subin's referral source, Tanvir Chaudhry, is listed as the business registration officer and which was paid $15,000.  Dkt. No. 170-17 at 10; Dkt. No. 187 at 3.  On November 19, 2013, BCF loaned an additional $22,000 to Salcedo, bringing the total to $95,500.  Dkt. No. 170-18.  In connection with each of the November loans, BCF charged due diligence and application fees that totaled $2,000.  Dkt. Nos. 170-17, 170-18.

It is Great American's theory that these loans were an integral part of the fraudulent scheme and that they demonstrate that Salcedo, with Subin and Gerling, knowingly committed

---

[1] ECF pagination.

fraud.  Unless BCF had engaged in due diligence or had some other basis to confirm the value of Salcedo's lawsuit, it would not have loaned the large sums of money at issue so quickly unless it knew in advance what the case would be worth.  Dkt. No. 188-6 at 7:7–15.  Great American argues that BCF knew what the case would be worth because its funding would be used for a referral to doctors to conduct unnecessary surgeries.  *Id*.

On September 11, 2025, Great American served the Documents Subpoena on BCF, calling for production of 20 different categories of documents.  Dkt. Nos. 188-7, 188-9.  On that same date, Great American also served the Magnus Subpoena.  Dkt. Nos. 188-8, 188-10.  The Magnus Subpoena calls for Magnus to sit for a deposition on October 9, 2025. Dkt. No. 188-8.  It identifies nine topics for deposition:

The history and ownership of BCF and Your relationship to the company.

Your and/or BCF's relationship with Subin

Your and BCF's relationship with Salcedo, including how, when, and who referred him to You and/or BCF in connection with the Incident and/or Underlying Action.

The preparation, negotiation, drafting, and/or execution of the First Funding Agreement, including Your and/or BCF's due diligence regarding the Incident and/or Underlying Action.

The payments made in connection with the First Funding Agreement to Salcedo and/or any person or entity, including proof of those payments in the form of checks and/or invoices.

The preparation, negotiation, drafting, and/or execution of the Second Funding Agreement, including Your and/or BCF's due diligence regarding the Incident and/or Underlying Action.

The payments made in connection with the Second Funding Agreement to Salcedo and/or any person or entity, including to an entity called Tri-State Medical Liaison Services, including proof of those payments in the form of checks and/or invoices.

The preparation, negotiation, drafting, and/or execution of the Third Funding Agreement, including Your and/or BCF's due diligence regarding the Incident and/or Underlying Action.

4

The payments made to third parties in connection with the Third Funding Agreement and/or any person or entity, including proof of those payments in the form of checks and/or invoices.

Dkt. No. 188-8.

On October 3, 2025, Great American served BCF with the 30(b)(6) Subpoena. Dkt. No. 188-14. It identifies eleven topics for deposition:

The history and ownership of BCF.

Magnus' relationship with BCF.

BCF's relationship with Subin.

BCF's relationship with Salcedo, including how, when, and who referred him to BCF in connection with the Incident and/or Underlying Action.

The preparation, negotiation, drafting, and/or execution of the First Funding Agreement, including BCF's due diligence regarding the Incident and/or Underlying Action.

The payments made in connection with the First Funding Agreement to Salcedo and/or any person or entity, including proof of those payments in the form of checks and/or invoices.

The preparation, negotiation, drafting, and/or execution of the Second Funding Agreement, including BCF's due diligence regarding the Incident and/or Underlying Action.

The payments made in connection with the Second Funding Agreement to Salcedo and/or any person or entity, including to an entity called Tri-State Medical Liaison Services, including proof of those payments in the form of checks and/or invoices.

The preparation, negotiation, drafting, and/or execution of the Third Funding Agreement, including BCF's due diligence regarding the Incident and/or Underlying Action.

The payments made to third parties in connection with the Third Funding Agreement and/or any person or entity, including proof of those payments in the form of checks and/or invoices.

The documents produced by BCF in response to Plaintiff Great American Insurance Company's document subpoena on BCF.

Dkt. No. 188-14.

BCF produced documents responsive to 19 of Great American's 20 requests but refused to produce documents in response to Request No. 20. Request No. 20 calls for BCF to produce: "[a]ll documents concerning any litigation-funding agreements entered into with Subin-represented clients between September 1, 2011 and September 1, 2015." Dkt. No. 188-7 at 12. On October 9, 2025, BCF served the following objection to Request No. 20:

> Best Case objects to this Request as overbroad and seeking information that is neither relevant to this action nor proportional to the needs of this case. Plaintiff has asserted a cause of action against Salcedo for fraud. All Best Case litigation funding agreements for Subin-represented clients generated over a four-year timeframe are not relevant to that issue. Rather, this Request appears to be a fishing expedition and attempt to support other litigations. The Request is further vague and overbroad because it seeks "All documents concerning" such litigation funding agreements. Particularly in light of Requests 3, 8, and 13, in which Plaintiff asserted that underlying due diligence materials are part of negotiating a funding agreement, a contention with which Best Case does not agree, it is unclear whether Plaintiff believes this Request applies not just to litigation funding agreements, but also to some undescribed scope of additional documents and communications relating to such agreements. Particularly in light of this ambiguity, Best Case objects that document collection and review would be unduly burdensome. Best Case also objects that this Request potentially seeks privileged information and communications. Best Case will not produce documents in response to this Request.

Dkt. No. 188-16 at 13.

Great American filed its motion to compel on November 12, 2025, supported by a memorandum of law in support of the motion and the affidavit of Mark R. Vespole. Dkt. Nos. 186–87. BCF and Magnus filed their motion to quash on the same date supported by a memorandum of law in support and the declaration of Gayle Pollack. Dkt. Nos. 190–92. BCF filed a corrected memorandum of law in support of the motion on November 24, 2025. Dkt. No. 196. On November 24, 2025, Great American filed a memorandum of law in opposition to the motion to quash and the declaration of Mark R. Vespole in support of its opposition to the motion to quash. Dkt. Nos. 197–98. On November 26, 2025, BCF filed a memorandum of law in opposition to the motion to compel along with the declarations of Neal Magnus and Gayle

Pollack.  Dkt. Nos. 200–02.  On December 8, 2025, both parties filed reply memoranda of law in support of their respective motions.  Dkt. Nos. 212–13.

## DISCUSSION

Rule 45 allows a party to serve a subpoena on a non-party for the production of documents and other information.  *See* Fed. R. Civ. P. 45(a)(1).  A subpoena issued pursuant to Fed. R. Civ. P. 45 must meet Fed. R. Civ. P 26(b)(1)'s "overriding relevance requirement" and may be quashed by this Court for failure to do so.  *Ireh v. Nassau Univ. Med. Ctr.*, 2008 WL 4283344, at *5 (E.D.N.Y. Sept. 17, 2008), *aff'd*, 371 F. App'x 180 (2d Cir. 2010); *see Peddy v. L'Oreal USA Inc.*, 2019 WL 3926984, at *2 (S.D.N.Y. Aug. 20, 2019).  "The party seeking discovery bears the initial burden of proving the discovery is relevant."  *In re Subpoena to Loeb & Loeb LLP*, 2019 WL 2428704, at *4 (S.D.N.Y. June 11, 2019) (quoting *Citizens Union of City of N.Y. v. Att'y Gen. of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017)); *see Lively v. Sourced Intel., LLC*, 2025 WL 2689044, at *1 (S.D.N.Y. Sept. 19, 2025); *Kingsway Fin. Servs. Inc. v. Pricewaterhouse Coopers LLP*, 2008 WL 4452134, at *4 (S.D.N.Y. Oct. 2, 2008).  "In general, the relevance standard that applies when seeking discovery from a party also applies to non-parties."  *Citizens Union of City of N.Y.*, 269 F. Supp. 3d at 139; *see Liner Freedman Taitelman Cooley, LLP v. Lively*, 2025 WL 2205973, at *3–4 (S.D.N.Y. Aug. 4, 2025) (same); *Malibu Media, LLC v. Doe*, 2016 WL 5478433, at *2 (S.D.N.Y. Sept. 29, 2016) ("[S]ubpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1).").  Under Rule 26(b)(1) of the Federal Rules of Civil Procedure, a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  "Information within this scope of discovery need not be admissible in evidence to be discoverable."  *Id.*  "[T]he determination whether . . . information is discoverable because it is relevant to the claims or defenses depends on the circumstances of the

pending action." *Collens v. City of New York*, 222 F.R.D. 249, 252–53 (S.D.N.Y. 2004) (quoting Fed. R. Civ. P. 26 advisory committee notes to 2000 amendment).

"If the party issuing the subpoena establishes the relevance of the materials sought, the burden then shifts to the movant to demonstrate an undue burden." *Sec. & Exch. Comm'n v. Ripple Labs, Inc.*, 2021 WL 1335918, at *2 (S.D.N.Y. Apr. 9, 2021) (citing *Griffith v. United States*, 2007 WL 1222586, at *2 (S.D.N.Y. Apr. 25, 2007)). "Whether a subpoena imposes an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the documents, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id.* (quoting *Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003)). "Trial courts have broad discretion to determine if a subpoena imposes an undue burden." *Id.* (citing *Jones v. Hirschfeld*, 219 F.R.D. 71, 74 (S.D.N.Y. 2003)); *see Insured Advoc. Grp., LLC v. Spartan Servs. Corp.*, 2024 WL 4893580, at *1–2 (S.D.N.Y. Nov. 26, 2024).

The Court denies Great American's motion with respect to the Document Subpoena. Great American's Request No. 20 falls within the broad range of relevance. That request calls for documents regarding litigation funding arrangements entered into with other Subin-represented clients. Great American argues that the documents responsive to Request No. 20 would show "if and what due diligence BCF performs before funding Subin-represented clients." Dkt. No. 187 at 2. It explains that it "seeks, but has not yet received, information regarding what due diligence, if any, BCF performed before entering the First, Second, and Third Funding Agreements as well as whether BCF had a business relationship with Subin which pre-dated these Agreements," and that the requested documents would show "what due diligence BCF performs before issuing litigation funding agreements to Subin-represented clients." Dkt.

No. 187 at 12.  If, in fact, BCF has other litigation funding agreements with Subin-represented clients, documents regarding such agreements could bear on the reasons why BCF felt comfortable extending the loans that it did to Salcedo and on the diligence it conducted in connection with such loans.

However, BCF has demonstrated that the Request would impose an undue burden.  There is no question that the Request would impose a burden on BCF.  Magnus attests that the cost to produce documents regarding the Salcedo funding arrangements exceeded $10,000, that if it were forced to produce additional documents the costs would increase linearly with each funding client, and that an order requiring BCF to produce years of litigation funding information would be financially ruinous.  Dkt. No. 201 ¶ 4.  That burden would be undue.  The requested documents only are of tangential relevance to this case.  By definition, Request No. 20 does not seek documents directly related to the Salcedo funding arrangement.  Moreover, the request, as drafted, would require BCF to turn over every litigation funding agreement it entered into with a Subin-related client from September 1, 2011 to September 1, 2015.[2]  Such agreements are sensitive.  They have a tendency to reveal "why the adverse party [to a litigation] [chose] to make certain strategic decisions in a case or avoid settlement." *Benitez v. Lopez*, 2019 WL 1578167, at *2 (E.D.N.Y. Mar. 14, 2019).  Production of these agreements also would implicate privacy interests of nonparties. *See Montenegro v. NewRez, LLC*, 2024 WL 707284, at *3 (E.D.N.Y. 2024) ("In addition to the parties' interests, courts have also considered the privacy interests of third parties implicated by document disclosure.").  Great American states that it has

---

[2] Great American has offered to narrow this request to three years: from September 1, 2011 to September 1, 2013.  Dkt. No. 212 at 2.  It is not the function of the Court, however, to mediate the discovery dispute but to determine whether the document request as drafted and served satisfies Rule 26.

served the Deposition Subpoena only as "an alternative means" of obtaining the information it seeks from a deposition of BCF, Dkt. No. 212 at 2; should Great American obtain the information it seeks from the deposition, the harm inflicted on BCF and the recipient of its funds from the production of their otherwise private documents would seem to be gratuitous.

The Court grants Great American's motion and denies BCF's motion with respect to the Magnus Subpoena. Great American seeks to obtain information "about the preparation, negotiation, or drafting of the Agreements, how BCF was connected to Salcedo, or the payment made to Tri-State Medical Liaison Services, Inc." Dkt. No. 187 at 14. All of those issues are relevant and material to the determination of Great American's fraud claim. As Great American explains, deposing Magnus would assist in "determining whether BCF's relationship with Subin pre-dated the funding agreements, *inter alia*, which would explain BCF's evident lack of due diligence." Dkt. No. 212 at 2. Magnus is listed on each Agreement under the section titled "Identification of Financier." Dkt. Nos. 170-16–170-18. He indisputably would have percipient knowledge.

BCF argues that "[c]ourts typically recognize that information concerning litigation funding is not relevant to evaluating the merits of a financed litigation" Dkt. No. 196 at 10. But that is an overbroad statement. Litigation funding agreements are discoverable if they are "shown to be material and necessary to a party's claim or defense." *Mineweaser v. One Beacon Ins. Co.*, 2025 WL 276667, at *6 (W.D.N.Y. Jan. 23, 2025); *see Great Am. Ins. Co. v. Gemstone Prop. Mgmt., LLC*, 2025 WL 1166993, at *1 (S.D.N.Y. Mar. 17, 2025) (ordering production of litigation funding agreements and finding that these documents "bear on whether fraud was committed"). "[T]here is no bright-line prohibition on such discovery." *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 311–12 (D. Nev. 2019), *aff'd sub nom. V5 Techs., LLC v. Switch, LTD.*,

2020 WL 1042515 (D. Nev. Mar. 3, 2020).  Courts have held that litigation funding agreements

generally are not discoverable to determine "whether or not the witness is telling the truth."

*Benitez v. Lopez*, 2019 WL 1578167, at *1–2 (E.D.N.Y. Mar. 14, 2019).  A party also cannot

obtain a litigation funding agreement to determine "the motives for Plaintiff's suit and for the

litigation funding."  *Id.*  But in this case, Great American has presented "objective evidence" in

support of its claim of relevance.  *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. at 312; *cf. Kaplan v.

S.A.C. Capital Advisors, L.P.*, 2015 WL 5730101, at *5 (S.D.N.Y. Sept. 10, 2015), *aff'd*, 141 F.

Supp. 3d 246 (2015) (denying production of litigation funding agreements where "defendants

have provided no nonspeculative basis" for their theory of relevance) (internal citation and

quotation marks omitted).

BCF further argue that there is no reason for Great American to have subpoenaed

Magnus personally when it could subpoena BCF.  Dkt. No. 196 at 12.[3]  A party can serve

subpoenas both for an individual and for a corporation.  Fed. R. Civ. P. 30(b)(1), (6); *see Estate

of Ungar v. Palestinian Authority,* 400 F. Supp. 2d 541, 543 (S.D.N.Y. 2005), *aff'd*, 332 Fed.

App'x 643 (2d Cir. 2009) (noting that corporate officers were "served with subpoenas, both

personally and as representatives of the corporation").  Great American also has provided a

reason for serving Magnus personally in addition to BCF.  Magnus is listed as the authorized

agent for BCF on each litigation funding agreement, Dkt. Nos. 170-16–170-18, and is either the

sender or recipient of every email in BCF's production, Dkt. No. 212 at 5.  He, and not another

agent that BCF designates to testify on its behalf, would have the percipient knowledge "to

connect the dots between BCF, Salcedo, and Subin," Dkt. No. 197 at 7–8.

---

[3] At the same time, BCF objects to the 30(b)(6) Subpoena on the grounds that it is overbroad.
Dkt. No. 196 at 13.

BCF also argues that the Magnus Subpoena is overly burdensome and irrelevant. Dkt. Nos. 196 at 10; 202 at 20. A Rule 30(b)(1) subpoena does not need to identify any subjects for deposition; the witness testifies from his personal knowledge and need not—like a 30(b)(6) witness—educate himself on any particular topics. The Court therefore views the identification of topics on the Magnus Deposition Subpoena as meaningless.[4] Finally, though BCF argues that "[r]equiring . . . Mr. Magnus to prepare for and appear at deposition is an additional and unwarranted burden," Dkt. No. 202 at 20, "[c]ertainly the obligation for sitting for a deposition is not, in and of itself, burdensome," *Probulk Carriers Ltd. v. Marvel Int'l Mgmt. & Transportation*, 180 F. Supp. 3d 290, 293 (S.D.N.Y. 2016). Magnus has "presented no particular facts that establish that a deposition would impose an undue or excessive burden." *Universitas Educ., LLC v. Nova Grp., Inc.*, 2013 WL 3328746, at *6 (S.D.N.Y. July 2, 2013).

The Court grants Great American's motion and denies BCF's motion with respect to the 30(b)(6) Subpoena. BCF presents no argument that a deposition would impose an undue burden and only argues that the deposition topics are irrelevant. Though the 30(b)(6) Subpoena was served "as a precaution" after counsel for BCF expressed concern about the Magnus Subpoena, Dkt. No. 187 at 8, Great American states that it may also depose BCF's corporate designee if

---

[4] The cases cited by BCF are inapposite. *Bhatt v. Lalit Patel Physician P.C.* concerned an individual plaintiff's wage-and-hour claims under the Fair Labor Standards Act where defendants alleged plaintiff had a second employer. 2020 WL 13048694, at *1 (E.D.N.Y. Oct. 19, 2020). The court found defendants' request for all documents concerning the company's employees, financial records beyond those already produced, income tax returns of the company and its owner, and request to depose the company overly burdensome and broad. *Id.* at *2–3. In *Blackrock Allocation Target Shares: Series S Portfolio v. Wells Fargo Bank, NA*, the Court denied a motion to compel where subpoena requests were unlimited in time or not addressed to the relevant time period, addressed to general investments rather than the trusts and loans at issue, and listed as deposition topics undefined "issues" raised in presentations. 2017 WL 9401102, at *2 (S.D.N.Y. Mar. 2, 2017). In contrast to the expansive and vague requests at issue in *Bhatt* and *Blackrock*, here Great American seeks to depose Magnus regarding three discrete litigation funding agreements that bear directly on their claim of fraud.

Magnus, in his deposition, refers to currently unknown representatives of BCF who have exclusive knowledge of the subject matters raised in the 30(b)(6) Subpoena. Dkt. No. 212 at 6. The Court thus grants the motion to compel.

## CONCLUSION

The motion to compel is GRANTED IN PART and DENIED IN PART. The motion is granted with respect to the Magnus Subpoena and the 30(b)(6) Subpoena. The motion is denied without prejudice with respect to the Document Subpoena. Should Great American timely issue a narrower request and BCF refuse to respond, Great American may renew its motion but only after having taken the Magnus deposition.

The motion to quash is DENIED.

The Clerk of Court is respectfully directed to close Dkt. Nos. 186 and 190.


SO ORDERED.

Dated: December 10, 2025
      New York, New York

_____
LEWIS J. LIMAN
United States District Judge