UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
:
GREAT AMERICAN INSURANCE COMPANY,               :
:
Plaintiff,                    :
:
-v-                                   :
:
GEMSTONE PROPERTY MANAGEMENT, LLC et al.,   :
:
Defendants.                   :
:
-----------------------------------------------------------------------X
:
GEMSTONE PROPERTY MANAGEMENT, LLC et al.,   :
:
Third-Party Plaintiffs,            :
:
-v-                                   :
:
ASPEN SPECIALITY INSURANCE COMPANY, et al.,  :
:
Third-Party Defendants.            :
:
-----------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 04/09/2026

23-cv-09100 (LJL)

MEMORANDUM &
ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiff Great American Insurance Company ("Plaintiff" or "Great American") moves, pursuant to Federal Rules of Civil Procedure 30(a)(1), 34(c), and 45, to compel non-party Dr. Thomas Kolb ("Kolb") to produce certain documents and appear for his deposition, pursuant to Great American's April 9, 2025 document subpoena ("Document Subpoena") and December 8, 2025 deposition subpoena ("Deposition Subpoena"). Dkt. No. 277.

Great American filed its letter motion along with supporting exhibits on April 6, 2026. Dkt. No. 277. Kolb filed a letter response in opposition on April 7, 2026, along with the declaration of Kolb. Dkt. No. 279. Great American filed a letter in further support of its motion on April 8, 2026. Dkt. No. 280.

This is the fifth time that subjects of Great American's third-party subpoenas have sought to avoid the obligation to provide documents and testimony in this matter and Great American has been forced to make a motion to compel. *See* Dkt. Nos. 146, 149, 186, 190, 221, 224, 261. In the past, the Court has granted Great American's requests for relief. Dkt. Nos. 214, 235, 271.[1]

The Court presumes familiarity with Plaintiff's allegations which have been described in the Court's earlier memoranda and orders compelling compliance. This insurance coverage action arises out of a complaint brought by defendant Luis Manuel Garcia Salcedo ("Salcedo") in New York State Supreme Court, Bronx County, asserting claims for negligence and New York Labor Law violations based on injuries Salcedo claimed that he suffered during construction work in September 2013 (the "Underlying Action"). Dkt. No. 60-1. Salcedo was represented in the Underlying Action by Subin Associates, LLP ("Subin"). Dkt. No. 133 ¶¶ 60–61. Kolb was one of Salcedo's treating physicians, along with Dr. Michael Gerling ("Gerling"), who performed surgery on Salcedo's neck. *Id.* ¶¶ 73, 98, 103. The Underlying Action was settled for $6 million on the eve of trial in the form of cash and an assignment of the insured's claims against Great American. *Id.* ¶ 40–43. Great American is an excess insurer of the defendants in the Underlying Action. *Id.* ¶¶ 15–17.

In its Second Amended Complaint ("SAC"), Great American alleges that it is the victim of common law fraud perpetrated by Salcedo, in conjunction with Subin and Gerling. Dkt. No. 133 ¶¶ 178–90. In particular, Plaintiff alleges that Subin was involved in a massive New York fraud scheme pursuant to which Subin represented workers who claimed they were injured in "unwitnessed falls" while employed on local construction sites and who sued the construction

---

[1] The Court also has granted motions for alternative service on the subjects of the subpoenas. Dkt. Nos. 211, 245.

companies, the insurance companies and the property owners for the alleged injuries.  *Id.* ¶¶ 64, 68.  The incidents, however, were not real but were "fake" and "staged."  *Id.* ¶ 64.  To perpetrate the scheme, Subin obtained fraudulent litigation funding loans and then referred clients to Gerling who provided unnecessary diagnostic and medical treatment to support the legal claims. *Id.* ¶¶ 66, 78–81.  As to Salcedo in particular, Plaintiff alleges that his claim of injury at his worksite was false and inconsistent with the contemporaneous medical records, and that the resulting surgical treatment he received from Gerling was unnecessary and not medically indicated.  *Id.* ¶¶ 82–106.  Plaintiff alleges that Kolb performed an MRI of Salcedo's cervical and lumbar spine on October 9, 2013.  *Id.* ¶ 98.  Following this MRI, Kolb diagnosed Salcedo with disc herniation at C3-C4 and disc bulge at L5-S1.  *Id.*; Dkt. No. 277 at 1.  Plaintiff further alleges that this diagnosis provided a pretext for Gerling to then perform neck and back surgeries on Salcedo on November 11, 2013, with no prior indication that such surgery was necessary. Dkt. No. 133 ¶ 102; Dkt. No. 280 at 1.

The Court also presumes familiarity with the legal standards applicable to this motion as they have been set out in prior opinions:

> Rule 45 allows a party to serve a subpoena on a non-party for the production of documents and other information or for a deposition.  *See* Fed. R. Civ. P. 45(a)(1). The subpoena recipient may move to quash the subpoena if the subpoena "(i) fails to allow a reasonable time to comply; (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c); (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or (iv) subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(i)–(iv); *Sadis & Goldberg, LLP v. Banerjee*, 2019 WL 13403291, at *1 (S.D.N.Y. Aug. 26, 2019).  If an objection is made to a subpoena, the serving party may move the Court for the district where compliance is required for an order compelling compliance with the subpoena.  Fed. R. Civ. P. 45(d)(2)(B).
>
> A subpoena issued pursuant to Fed. R. Civ. P. 45 must meet Fed. R. Civ. P 26(b)(1)'s "overriding relevance requirement" and may be quashed by this Court for failure to do so.  *Ireh v. Nassau Univ. Med. Ctr.*, 2008 WL 4283344, at *5 (E.D.N.Y. Sept. 17, 2008), *aff'd*, 371 F. App'x 180 (2d Cir. 2010) (summary order); *see Peddy v. L'Oreal USA Inc.*, 2019 WL 3926984, at *2 (S.D.N.Y. Aug. 20, 2019).

"The party seeking discovery bears the initial burden of proving the discovery is relevant." *In re Subpoena to Loeb & Loeb LLP*, 2019 WL 2428704, at *4 (S.D.N.Y. June 11, 2019) (quoting *Citizens Union of City of N.Y. v. Att''y Gen. of N.Y.*, 269 F. Supp. 3d 124, 139 (S.D.N.Y. 2017)).  "If the party issuing the subpoena establishes the relevance of the materials sought, the burden then shifts to the movant to demonstrate an undue burden." *Id.* (citing *Griffith v. United States*, 2007 WL 1222586, at *2 (S.D.N.Y. Apr. 25, 2007)).  "Whether a subpoena imposes an undue burden depends upon such factors as relevance, the need of the party for the documents, the breadth of the document, the time period covered by it, the particularity with which the documents are described and the burden imposed." *Id.* (quoting *Night Hawk Ltd. v. Briarpatch Ltd., L.P.*, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003)).  "The trial court has broad discretion to determine whether a subpoena imposes an undue burden." *Id.* (citing *Jones v. Hirschfeld*, 219 F.R.D. 71, 74 (S.D.N.Y. 2003)); *see Insured Advoc. Grp., LLC v. Spartan Servs. Corp.*, 2024 WL 4893580, at *1–2 (S.D.N.Y. Nov. 26, 2024).  "The standard applicable to depositions is similar to the standard for document subpoenas[.]" *Ohio Dep't of Ins. v. RPM Mortg., Inc.*, 2020 WL 8513150, at * 2 (S.D.N.Y. Dec. 2, 2020).  "[T]he obligation for sitting for a deposition [does] not, in and of itself," demonstrate undue burden. *Probulk Carriers Ltd. v. Marvel Int'l Mgm't & Transp.*, 180 F. Supp. 3d 290, 293 (S.D.N.Y. 2016).

*Great Am. Ins. Co. v. Gemstone Prop. Mgmt., LLC*, 2026 WL 353609, at *1 (S.D.N.Y. Feb. 9, 2026).

The Document Subpoena seeks documents from Kolb concerning his treatment of Salcedo, including the original MRI films and CT scans that Kolb took of Salcedo.  Dkt. No. 277-2.  The Deposition Subpoena seeks Kolb's deposition testimony.  Dkt. No. 277-3.  Great American has established the relevance of the documents and Kolb's testimony.  Salcedo claimed an injury on September 12, 2023.  That same day, he entered the emergency room at Bronx Lebanon Hospital, claiming to have been struck by a pipe on the right side of his back while helping a "friend."  Dkt. No. 262 at 4.[2]  Five days later, on September 17, 2013, he was seen by Dr. Joshua Auerbach, from Bronx Lebanon Hospital, who diagnosed Salcedo with lower back pain and recommended physical therapy.  *Id.* at 4–5.  During his twelve physical therapy

---

[2] Plaintiff incorporates the argument regarding Salcedo's medical treatment in Dkt. No. 262 into this motion to compel.  *See* Dkt. No. 277 at 1 ("Salcedo's records from Bronx Lebanon Hospital indicate that he only suffered injuries to his lower back" (citing Dkt. No. 262 at 3–5)).

sessions between September 24, 2013 and November 4, 2013, Salcedo only complained of and received therapy on his back. *Id.* On October 9, 2013, however, as Salcedo's physical therapy sessions were ongoing, Kolb conducted an MRI and concluded that Salcedo had injuries to his neck. Dkt. No. 277 at 1. Prior to this MRI, Salcedo's medical records indicated that he only suffered injuries to his lower back. *Id.* Plaintiff alleges that Kolb's imaging provided the pretext for the unnecessary neck surgery that Gerling performed on Salcedo. Dkt. No. 280.

Kolb challenges the subpoenas as overbroad and imposing an undue burden. He first argues that Kolb's role in providing care and treatment to Salcedo does not entitle Plaintiff to seek "testimony requiring professional medical judgment" without fulfilling the obligations attached to expert discovery in Federal Rules of Civil Procedure 26 and 45. Dkt. No. 279 at 2; Fed. R. Civ. P. 26(b)(4)(E) (requiring payment of a reasonable fee for expert witnesses); Fed. R. Civ. P. 45(d)(3)(B)(ii) (protections for an unretained expert). The argument is not well-founded.

Kolb happens to be a medical doctor, but Plaintiff requests his testimony not as an independent expert but because of his percipient knowledge as a participant in the conduct alleged in the instant case. Kolb is therefore not entitled by virtue of his status as a doctor to protection from a subpoena for his testimony or to a fee different to that owed to any other person subpoenaed to testify in federal court. "[T]the public . . . has a right to every man's evidence." *Trammel v. United States*, 445 U.S. 40, 50 (1980) (quoting *United States v. Bryan*, 339 U.S. 323, 331 (1950)). Great American is not limited to solely inquiring about the date of imaging, the existence of records, the fact that a study was performed, or the chain of custody of films while deposing Kolb as a fact witness. *See* Dkt. No. 279 at 3 (Kolb seeking to so limit the deposition testimony). Kolb's role as described was not just that of a document custodian but as a medical doctor. Plaintiff is therefore entitled to depose Kolb about his medical treatment of

and consultations with Salcedo, including his review of the Bronx Lebanon Hospital's records for Salcedo as part of that treatment, the facts he learned and the opinions he formed while providing medical care to Salcedo, how he was referred to Salcedo, and his relationships with Subin and Gerling, if any, prior and subsequent to treating Salcedo, as well as any other fact relevant to this case.

The fact that the treatment Kolb performed and the opinions he formed were the product of his medical training does not *ipso facto* make him an expert witness any more than a law degree would make an attorney an expert witness, an engineering degree would make an engineer an expert witness, or recognition as a certified public accountant would make an account an expert witness. If Kolb is testifying to "facts learned and opinions formed in the course of treatment," he is not an expert witness. *DeRienzo v. Metro. Transit Auth. & Metro-N. Rail Rd.*, 2004 WL 67479, at *2 (S.D.N.Y. Jan. 15, 2004); *see In re World Trade Ctr. Lower Manhattan Disaster Site Litig.*, 2014 WL 5757713, at *3 (S.D.N.Y. Nov. 5, 2014) ("Testimony as to facts or opinions formed during a consultation with a patient are admissible absent Rule 26(a)(2) expert disclosures. . . . this may include opinions, formed in the course of treatment, about the cause of a patient's injuries."). "A witness who serves solely as a fact witness[,] however, is entitled only to the statutory witness fee under 28 U.S.C. § 1821." *Trombetta v. Novocin*, 2023 WL 2575242, at *1 (S.D.N.Y. Mar. 20, 2023) (internal quotation marks and citation omitted)).

Kolb next argues that the Document Subpoena imposes an undue burden because it seeks "original imaging materials and associated records" that "are not necessarily maintained in a manner that permits immediate, cost-free production." Dkt. No. 279 at 4. He argues that "[r]etrieving imaging requires staff time, review of storage systems, coordination with imaging

6

systems or vendors, duplication, and other administrative effort and expense." *Id.* Kolb further asserts that "Plaintiff offers no affidavit, no factual showing, and no technical explanation establishing that such retrieval is trivial" and that Plaintiff's motion "is entirely unsupported by any evidentiary showing as to burden, cost, or feasibility of compliance." *Id.* at 4–5. But Great American has no burden to show that production would be cost-free. *See Delta Air Lines, Inc. v. Lightstone Grp. LLC*, 2021 WL 2117247, at *3 (S.D.N.Y. May 24, 2021) (fact that recipient is a third-party is insufficient reason to find document subpoena burdensome as "Rule 45 . . . expressly provides that third-parties may have to produce documents"). Its burden is to show the relevance of the requested documents, and it has discharged that duty. The burden of demonstrating that the subpoena imposes an undue burden falls on Kolb, the person resisting the subpoena. *See In re Subpoena to Loeb & Loeb LLP*, 2019 WL 3926984, at *2. And Kolb "cannot merely assert that compliance with the subpoena would be burdensome." *In re Ex Parte Application of Kleimar N.V.*, 220 F. Supp. 3d 517, 522 (S.D.N.Y. Nov. 16, 2016). He must "se[t] forth the manner and extent of the burden and the probable negative consequences of insisting on compliance." *Id.* He has not done so. Kolb has not established that the "administrative effort and expense" required to produce the documents imposes an undue burden. Dkt. No. 279 at 4.

Kolb finally requests that Plaintiff bear the cost of production under the Document Subpoena pursuant to Rule 45. Dkt. No. 279 at 6; Fed. R. Civ. P. 45(d)(2)(B)(ii). "Under Federal Rule of Civil Procedure 45, a party issuing a subpoena is not required to bear the subpoenaed nonparty's cost of compliance." *In re World Trade Ctr. Disaster Site Litig.*, 2010 WL 3582921, at *1 (S.D.N.Y. Sept. 14, 2010) (citing *In re First Am. Corp.*, 184 F.R.D. 234, 241 (S.D.N.Y. 1998)); 9 Moore's Federal Practice—Civil § 45.33 (2025) ("A nonparty responding to

a subpoena is generally required to bear its own costs of production."). "[C]ost-shifting is not a common practice. Instead, courts assume that a responding party ordinarily bears the cost of responding." 9 Moore's Federal Practice—Civil § 45.41[3] (2024). Instead, Rule 45 provides that a court ordering compliance with a subpoena "must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance." Fed. R. Civ. P. 45(d)(2)(B)(ii). Where a non-party has failed to establish the risk of "significant expense," fee-shifting is generally denied. *See Delta Air Lines*, *Inc.*, 2021 WL 2117247, at *3 ("Because [non-party] has failed to demonstrate that there is an undue burden (or, indeed, specified any burden) involved in complying with the subpoena, the request for cost-shifting is denied at this time."); *Honeywell*, 230 F.R.D. at 303 (denying request for cost-shifting where nonparty "has not offered any basis for determining the reasonable costs for compliance with the subpoena."). Kolb has not demonstrated that compliance with the Document Subpoena would impose significant expense. The request for cost-shifting is therefore denied.

The motion to compel at Dkt. No. 277 is GRANTED. Kolb shall produce Salcedo's medical records by May 11, 2026 and shall sit for his deposition by April 29, 2026.

The Clerk of Court is respectfully directed to close the motion at Dkt. No. 277.

SO ORDERED.

Dated: April 9, 2026
        New York, New York
_____
                LEWIS J. LIMAN
                United States District Judge

8