USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/04/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GREAT AMERICAN INSURANCE CO.,

Plaintiff,

-v-

GEMSTONE PROPERTY MANAGEMENT, LLC, et al.,

Defendants.

23-cv-9100 (LJL)

MEMORANDUM AND ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiff Great American Insurance Company ("Great American" or "Plaintiff") moves for an order striking the confidentiality designations of non-party Herbert Subin ("Subin") with respect to the transcript of Subin's deposition in this case.[1] Dkt. No. 381-1; *see also* Dkt. No. 382-1 (motion filed on public docket with redactions). The motion is granted in part and denied in part.

Subin was deposed on July 24, 2026. Dkt. No. 381-2 at 3. He invoked his Fifth Amendment right not to incriminate himself in response to questions asked by counsel for Great American. At the time Subin first invoked the privilege, his counsel read a statement for the record:

[1] Plaintiff filed its motion and the motion's accompanying materials under seal. *See* Dkt. No. 381-1; *see also* Dkt. No. 380 (Plaintiff's motion to seal). Plaintiff also filed a public version of the motion and its accompanying materials. *See* Dkt. No. 382. To the extent "the Court cites or quotes a document that is sealed, the Court has reviewed the document and determined that the cited or quoted section does not merit sealing." *Evans v. Select Portfolio Servicing, Inc.*, 827 F. Supp. 3d 422, 433 n.1 (E.D.N.Y. 2026); *see also Doe 3 v. Indyke*, 2025 WL 2642114, at *2 n.1 (S.D.N.Y. Sept. 15, 2025).

> I'll just put a statement for the record that this deposition is proceeding against the backdrop of fraud and criminal allegations both in this case and in several other pending lawsuits.
>
> Plaintiffs allege that Subin and other individuals and entities engaged in fraudulent activities, citing other lawsuits asserting fraud and RICO claims against Mr. Subin. That's ECF 133.
>
> Plaintiffs' motion to compel goes further, arguing that Subin's, quote, documented fraudulent conduct, end quote, supports piercing privilege under the crime-fraud exception. That's ECF 169.
>
> Several of the cases plaintiffs rely upon assert RICO claims against Mr. Subin requiring proof of predicate criminal offenses, such as mail fraud, wire fraud, and extortion, as well as claims under New York Judiciary Law, Section 487, which makes attorney deceit or collusion a misdemeanor.
>
> Given these fraud and overlapping allegations, Mr. Subin has reasonable cause to fear that testimony in matters related to them could further a, quote, link in the chain of evidence, end quote, supporting a criminal prosecution. That's *Hoffman v. U.S.*, 341 U.S. 479.
>
> Mr. Subin will evaluate each question individually and may invoke his Fifth Amendment rights as warranted today. As a shorthand, when he says, quote, I invoke, end quote, that means he's invoking that right.
>
> This invocation cannot be understood as an admission of guilt or wrongdoing or evidence of an admission, as the Supreme Court made clear in *Ohio v. Reiner*, 532 U.S. 17.
>
> The Fifth Amendment protects, quote, innocent men who otherwise might be ensnared by ambiguous circumstances, end quote.

Dkt. No. 381-2 at 11:13–13:22.

Following the deposition, counsel for Subin designated significant portions of the deposition transcript as "Confidential" pursuant to Paragraph 4 of the Protective Order in this case, *see* Dkt. No. 255 ("Protective Order"), including the foregoing statement and other invocations of the Fifth Amendment by Subin. Dkt. No. 381-3. Great American has objected to the confidentiality designations as overbroad, as exceeding the scope of the Protective Order and the Federal Rules of Civil Procedure, and as unsupported by good cause. Dkt. No. 381-1; *see also* Dkt. No. 381-4 (pre-motion letter from Plaintiff's counsel to Subin's counsel challenging

confidentiality designations). Subin opposes the request to strike the confidentiality designations, arguing that a protective order is necessary to protect him against the risk that a future jury pool would be tainted by his invocation of his Fifth Amendment rights, thereby excessively burdening his invocation of his Fifth Amendment rights for no legitimate litigation purpose. Dkt. No. 387 at 3. He contends that that basis provides sufficient justification for applying a confidentiality designation pursuant to the Protective Order or, alternatively, provides good cause for the Court to issue a new protective order. *Id.*

Federal Rule of Civil Procedure 26(c) governs issuance of protective orders in discovery disputes. The rule provides, in pertinent part:

> [A] party or any person from whom discovery is sought may move for a protective order[,] . . . [and] [t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense.

Fed. R. Civ. P. 26(c)(1). Though there is no "presumptive right of public access to pretrial discovery materials," *Haidon v. Town of Bloomfield*, 552 F. Supp. 3d 265, 274 (D. Conn. 2021), a party in possession of such materials may use them as they like. A protective order may therefore, among other relief, "limit[] the disclosure of information or materials obtained through discovery." *Quint v. Freda*, 1999 WL 65046, at *3 (S.D.N.Y. Feb. 11, 1999); *see also Alerte Congolaise Pour L'environnement Et Les Droits De L'homme v. Symbion Power LLC*, 2026 WL 2151394, at *10 (S.D.N.Y. July 27, 2026). A district court has wide discretion in "[t]he grant and nature" of protective orders. *Dove v. Atl. Cap. Corp.*, 963 F.2d 15, 19 (2d Cir. 1992) (internal quotation marks omitted); *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984) ("The trial court is in the best position to weigh fairly the competing needs and interests of parties affected by discovery.").

Protective orders typically take one of two forms: "[p]rotective order[s] granted on the basis of a stipulation by the parties" or contested "protective order[s] granted after a hearing to show good cause." *See Charter Oak Fire Ins. Co. v. Electrolux Home Prods., Inc.*, 287 F.R.D. 130, 133 (E.D.N.Y. 2012) (Bianco, J.) (internal quotation marks omitted). Though "district courts often issue stipulated protective orders without finding good cause," *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1249 (11th Cir. 2020), the practice has been criticized by several circuit courts, *see, e.g.*, *Jepson, Inc. v. Makita Elec. Works, Ltd.*, 30 F.3d 854, 858 (7th Cir. 1994) ("Even if the parties agree that a protective order should be entered, they still have the burden of showing that good cause exists for issuance of that order." (internal quotation marks omitted)); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 785 (3d Cir. 1994) (noting that "[d]isturbingly, some courts routinely sign orders which contain confidentiality clauses without considering the propriety of such orders, or the countervailing public interests which are sacrificed by the orders"); *Procter & Gamble Co. v. Bankers Tr. Co.*, 78 F.3d 219, 227 (6th Cir. 1996); *In re Violation of Rule 28(D)*, 635 F.3d 1352, 1358 (Fed. Cir. 2011); *cf. In re Roman Cath. Archbishop of Portland in Or.*, 661 F.3d 417, 424 (9th Cir. 2011) (explaining that a court need not make a finding of good cause where "the parties stipulate to such an order," but that such an order requires a "party opposing [a subsequent] disclosure" to "establish[] that there is good cause to continue the protection of the discovery material"); *In re: Chiquita Brands*, 965 F.3d at 1249–50 (similar). Additionally, some district courts in this Circuit have recognized that the good cause standard applies to protective orders agreed to by the parties. *See, e.g.*, *Kelly v. Jefferies Grp., Inc.*, 2018 WL 8221524, at *3 (S.D.N.Y. Oct. 25, 2018); *Fournier v. Erickson*, 242 F. Supp. 2d 318, 342 (S.D.N.Y. 2003). This Court agrees that the issuance of any protective order pursuant to Rule 26(c)—whether entered pursuant to a stipulation by the parties or granted

after contested motion practice—requires a finding of good cause. The plain text of Rule 26(c) indicates that it applies to all protective orders and does not distinguish between the two.[2]

Importantly, "protective orders do *not* govern" the question of whether a party may file a document with the Court under seal. *Martinez v. City of New York*, 2022 WL 17090292, at *3 (E.D.N.Y. June 8, 2022). That question is governed by the common law and First Amendment rights of access, both of which are qualified. "The common law right of public access to judicial documents is firmly rooted in our nation's history" and stems from "'the need for federal courts . . . to have a measure of accountability and for the public to have confidence in the administration of justice.'" *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006) (quoting *United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995) ("*Amodeo II*")). In light of those purposes, the right does not apply to all documents filed on the docket but rather to "judicial documents"—those that are "relevant to the performance of the judicial function and useful in the judicial process." *Id.* (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*")). Once the right and its presumption of openness attaches, a court must balance the "weight of that presumption" against "'competing considerations.'" *Id.* at 119–20 (quoting *Amodeo II*, 71 F.3d at 1050).

The First Amendment, meanwhile, "secures to the public and to the press a right of access to certain civil proceedings." *C.R. Corps v. LaSalle*, 184 F.4th 104, 124 (2d Cir. 2026)

[2] A related issue, though not one that the Court need take up at this time, is what a showing of good cause under Rule 26(c) requires. "[D]istrict courts [in the Second Circuit] have not fully settled on a test for evaluating what may amount to 'good cause' under Rule 26(c)" and it does not appear that the Circuit has addressed the issue. *Haidon*, 552 F. Supp. 3d at 269. In particular, "[s]ome courts have held that the party opposing disclosure must make a particular and specific demonstration of fact," while others "have dispensed with the specificity requirement, only demanding that the moving party show good cause." *Id.* (quoting *Schoolcraft v. City of New York*, 2013 WL 4534913, at *3 (S.D.N.Y. Aug. 27, 2013)).

(alterations incorporated) (quoting *Westmoreland v. Columbia Broad. Sys., Inc.*, 752 F.2d 16, 23 (2d Cir. 1984)). Courts "appl[y] two different approaches when deciding whether the First Amendment right applies to particular material." *Newsday LLC v. County. of Nassau*, 730 F.3d 156, 164 (2d Cir. 2013). Under the "experience and logic test," which applies to judicial documents *and* proceedings, the inquiry turns on "whether the place and process have historically been open to the press and general public" (*i.e.*, experience) and "whether public access plays a significant positive role in the functioning of the particular process in question" (*i.e.*, logic). *Courthouse News Serv. v. Corsones*, 131 F.4th 59, 66–67 (2d Cir. 2025) (quoting *Press-Enter. Co. v. Sup. Ct. of Cal. for Riverside County*, 478 U.S. 1, 8 (1986)). If the answer to both questions is "yes," "there exists a qualified, presumptive First Amendment right of public access to the proceeding or document." *Id.* at 67. And under the "necessary corollary" approach, which applies "only when analyzing judicial documents related to judicial proceedings covered by the First Amendment right," a presumptive First Amendment right attaches where "the documents at issue 'are derived from or are a necessary corollary of the capacity to attend the relevant proceedings.'" *Newsday*, 730 F.3d at 164 (quoting *Lugosch*, 435 F.3d at 120). But, under either approach, the presumptive First Amendment right can be "overcome by 'specific, on-the-record findings that sealing is necessary to preserve higher values [so long as] the sealing order is narrowly tailored to achieve that aim.'" *Id.* at 165 (quoting *Lugosch*, 435 F.3d at 124).

Earlier in the litigation, the parties filed a consent letter motion asking the Court to enter a protective order, Dkt. No. 253, which the Court granted upon a showing of good cause, Dkt. No. 255. The Protective Order gives a deponent or the deponent's counsel the right to designate a portion of a deposition transcript as "Confidential" if it contains "Confidential" information.

Dkt. No. 255 ¶ 4. Only limited categories of information are considered "Confidential." Under Paragraph 2 of the Protective Order, as relevant here, "Confidential" information consists of

> material the public disclosure of which is either restricted by law or will cause harm to the business, commercial, financial or personal interests of the producing person . . . and that consists of: . . . (d) any information of a personal or intimate nature regarding any individual; or (e) any other category of information hereinafter given confidential status by the Court.

*Id.* ¶ 2. A party who objects to the "Confidential" designation has the right to seek relief from the Court after attempting to reach agreement with the designating party. *Id.* ¶ 8.

The designation of material as "Confidential" is consequential. Under the Protective Order, Confidential information may be disclosed only to a limited category of persons. *Id.* ¶ 6. In some instances, the person must sign a Non-Disclosure Agreement before being provided Confidential information. *Id.* ¶ 7. Although Confidential information may be disclosed to this Court, *id.* ¶ 6(i), it may not be disclosed to other courts or governmental authorities absent a modification of the protective order. Further, the protective order survives the termination of this litigation and willful violation of it subjects the violator to punishment for contempt of Court. *Id.* ¶¶ 18–19.

First, Subin contends that his invocation of the Fifth Amendment at his deposition falls under the Protective Order, namely Paragraph 2(d)—"information of a personal or intimate nature." Dkt. No. 387 at 3. Subin is incorrect. The Court has already held that another third-party witness's invocation of his Fifth Amendment right did not "fall under [any of the] categories" of Confidential information covered by the Protective Order and thus could not be designated as Confidential. *See Great Am. Ins. Co. v. Gemstone Prop. Mgmt., LLC*, 2026 WL 2199985, at *1 (S.D.N.Y. July 30, 2026), Dkt. No. 346. The invocation of the Fifth Amendment does not constitute "information of a personal or intimate nature." Though the Protective Order does not define the phrase, it has been commonly understood to include information such as that

concerning a party's sexual conduct or medical history. *See, e.g.*, *Lively v. Wayfarer Studios LLC*, 2025 WL 815364, at *3 (S.D.N.Y. Mar. 13, 2025) (allowing "medical records of parties or third parties" to "be marked [Attorneys' Eyes Only]" as "[m]edical records are 'information of the most intimate kind'" (quoting *O'Connor v. Pierson*, 426 F.3d 187, 201 (2d Cir. 2005)); *Doe 1 v. Branca USA, Inc.*, 2022 WL 2713543, at *4 (S.D.N.Y. July 13, 2022) (explaining, in the context of a motion to proceed pseudonymously, that a complaint stemming from plaintiffs' experience of sexual abuse "involve[d] allegations of the most intimate, sensitive, and personal nature"); *cf. Corbin v. Triborough Bridge & Tunnel Auth.*, 2026 WL 2240726, at *29 (S.D.N.Y. Aug. 4, 2026) (granting motion to seal "screenshots of calendar entries" that were akin "to private diary or journal entries and contain[ed] extremely intimate and explicit descriptions of . . . sexual encounters"). Subin does not seek to protect any information that he disclosed during the deposition. He seeks to protect his act of invoking the Fifth Amendment—a decision he made in the context of questioning about his business activity. That act cannot be said to involve "personal or intimate" information. Moreover, were Great American to file a motion to compel Subin to answer any of the questions posed to him at his deposition, he—like any other witness standing on his constitutional rights—would have to reveal publicly to the Court that he invoked the Fifth Amendment. Thus, Subin's confidentiality designations do not fall under the Protective Order.

Second, Subin argues that, even if the Protective Order does not cover his confidentiality designations, good cause justifies the imposition of a separate protective order that does. That argument fails too.[3] The fact that Subin invoked the Fifth Amendment is insufficient to establish

---

[3] Because Subin has not demonstrated *any* good cause, the Court need not determine what standard of good cause to apply. *See supra* note 2.

the risk of embarrassment against which Rule 26(c)(1) was designed to guard. The invocation of the Fifth Amendment says nothing whatsoever about whether a deponent has engaged in any wrongdoing or misconduct. "Because 'the privilege protects the innocent as well as the guilty,' an assertion of innocence is not necessarily inconsistent with an assertion of the Fifth Amendment privilege." *United States v. Avenatti*, 2020 WL 418453, at *7 (S.D.N.Y. Jan. 26, 2020) (quoting *Ohio v. Reiner*, 532 U.S. 17, 18 (2001) (per curiam)). Further, "[a] witness may invoke th[e] privilege even 'where practically there is only a slight possibility of prosecution.'" *Sec. & Exch. Comm'n v. Pence*, 323 F.R.D. 179, 187 (S.D.N.Y. 2017) (quoting *United States v. Miranti*, 253 F.2d 135, 139 (2d Cir. 1958)). It is sufficient that the fear of prosecution is "reasonable" and more than "a mere imaginary possibility." *Camelot Grp., Ltd. v. W.A. Krueger Co.*, 486 F. Supp. 1221, 1229 (S.D.N.Y. 1980) (Weinfeld, J.) (internal quotation marks omitted). Such fear, as the Court has explained in this very case, can be created by the allegations of complaints in private lawsuits that a person has engaged in conduct that, if true, would provide a basis for prosecution. *See Great Am. Ins. Co. v. Gemstone Prop. Mgmt.*, 2026 WL 2654343, at *3 (S.D.N.Y. Sept. 8, 2026), Dkt. No. 365. In fact, the Court in a publicly available opinion found that another witness was entitled to invoke the Fifth Amendment privilege in his deposition because of allegations *against Subin* in multiple state and federal lawsuits claiming fraud and violations of the Racketeer Influenced Corrupt Organizations Act. *Id.* (citing cases against Subin). As the Court's prior order demonstrates, that Subin is the defendant in those lawsuits is no secret.

Subin further argues that good cause exists because the release of his testimony "would place before the very community from which any criminal jury would be drawn a record of his invocations." Dkt. No. 387 at 3. Although Subin is correct that striking the confidentiality

designations eliminates his protection against his answers becoming public, his fear that such disclosure would prejudice a future jury is unfounded. Subin has not been charged with any crime, and it is unclear if he ever will be. To the extent that the public disclosure of deposition testimony, whether by means of the press or some other mechanism, could somehow create the risk of tainting a prospective jury pool, this Court and others have the tools to address that issue, including the "conduct[ing of] an exhaustive jury selection process." *See Coggins v. County of Nassau*, 2014 WL 495646, at *1 (E.D.N.Y. Feb. 6, 2014).

Though Subin cites a case from another district court in this Circuit for the proposition that good cause is "a low hurdle to clear when the applicant seeks a modest protective order limiting the use of deposition transcripts," Dkt. No. 387 (quoting *Haidon*, 552 F. Supp. 3d at 274), Subin overreads that opinion. In *Haidon*, Judge Underhill stressed that the role of a protective order must be understood in relationship to "the Federal Rules' broad discovery regime," which provides for a free flow of information in order "to assist parties in resolving a particular case." *Haidon*, 552 F. Supp. 3d at 271. That framework and its discounting of a public interest in discovery materials—whatever its merits—does not justify a protective order here. Applying a protective order to a deponent's invocation of the Fifth Amendment does nothing to incentivize the free flow of information between the parties. The only information Subin seeks to protect are the questions asked of him and the fact that he invoked the Fifth Amendment in response, neither of which will facilitate the parties' resolution of this case.[4]

[4] Moreover, Judge Underhill recognized that "in certain instances, 'good cause' will not exist," such as where "the public interest in the case is large, or when the deposition testimony at issue may be particularly important in other litigation." 552 F. Supp. 3d at 265. Those categories would potentially seem to apply here.

Finally, Great American requests that the transcript—which has been filed with this motion—be treated as a judicial document entitled to a presumption of access under the common law. That request is denied. As Subin argues, "[a] party cannot manufacture the predicate for public access by filing a motion whose purpose is to destroy confidentiality. If it could, every confidential discovery item would become a public record the instant its proponent moved to unseal it." Dkt. No. 387 at 2. And the Second Circuit has already rejected the argument. *See S.E.C. v. TheStreet.Com*, 273 F.3d 222, 233 (2d Cir. 2001) (deeming "without merit" the argument that confidential deposition testimony became a judicial document "because the Court reviewed it in order to decide whether or not to enter the protective order").

**CONCLUSION**

For the reasons stated above, the motion at Dkt. No. 381-1 is GRANTED IN PART and DENIED IN PART. The parties are directed to meet and confer regarding the extent to which the letter briefs on this motion and the attachments to them can be unsealed in light of this memorandum and order. *See* Dkt. No. 380.

SO ORDERED.

Dated: November 4, 2026
New York, New York



LEWIS J. LIMAN
United States District Judge